IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERALDINE TODD, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2687 |
| | § | |
| MICHAEL ASTRUE, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this appeal from a denial of social security disability benefits and supplemental security income are Plaintiff's motion for summary judgment (Docket Entry No. 13) and Defendant's cross motion for summary judgment (Docket Entry No. 20).

The Court, having considered the motions, the administrative record, all relevant filings, and the applicable law, **GRANTS** Defendant's cross motion for summary judgment (Docket Entry No. 20), **DENIES** Plaintiff's motion for summary judgment (Docket Entry No. 13), and **AFFIRMS** the Commissioner's decision.

## I. CASE BACKGROUND

### A.    Procedural Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration (the

"Commissioner") regarding her claims for disability benefits and supplemental security income under Title II and Title XVI, respectively, of the Social Security Act ("the Act").

Plaintiff filed her application for disability insurance benefits on December 14, 2004, alleging disability since June 1, 2000. Tr. 20. After her application was denied at the first two levels of administrative review, Plaintiff requested a hearing before an administrative law judge ("ALJ"). At a hearing held on October 15, 2007, the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). Tr. 282-297. On November 8, 2007, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. Tr. 20. The Appeals Council denied Plaintiff's request for review. Accordingly, the ALJ's decision became the Commissioner's final decision for purposes of this Court's review.

**B.    Factual Background**

At the hearing held on October 15, 2007, Plaintiff testified that she was forty-three years old and lived in a boarding house. Tr. 285. She attained a ninth-grade education and was in special education classes throughout her schooling. She reported staying overnight at the neuropsychiatric center at Ben Taub Hospital a few days prior to the hearing because "stuff was crawling on me and I was seeing things." Tr. 287. She denied any recent drug use, but admitted to a history of abusing crack cocaine prior to June of 2007. Tr. 288. She was in jail for possession of crack cocaine from December 7, 2006, through June of 2007. *Id.* Plaintiff testified to having difficulty getting along with people because "I hear a lot of noise and it's like they talk about me they are out to get me." Tr. 289. In response to

2

questions regarding her personal hygiene, she stated that she bathed two days ago, combed her hair that morning, and changed clothes the day before. *Id.*

Plaintiff testified to having trouble concentrating, and stated that her mind races and does not "stay on the same thing." Tr. 290. She was last employed in 1986 or 1987 at a paint and body shop, sanding and taping cars. Tr. 291. She stayed in the back of the shop, working alone, and had no contact with her supervisor. She worked at the shop for nine years until it went out of business. Tr. 292. She then worked at motels, cleaning rooms in exchange for cash and a place to stay, but was unable to explain why she no longer cleaned rooms. *Id.*

Plaintiff reported a history of seeing "green people" when looking at bright lights. Tr. 293. She stated she had not seen the green people for a long time until three weeks ago. Tr. 292-93. She is awaiting eligibility for psychiatric treatment and medication through the psychiatric center. Tr. 293.

Under direct examination by the ALJ, the VE testified that, given the limitations set forth in an evaluation completed by Dr. Carole F. Zuccone, Plaintiff would be able to perform substantial gainful employment in sedentary, light, and medium unskilled work. Tr. 294. However, in regards to a hypothetical individual who had difficulty concentrating and had unusual and unconventional thoughts over three-fourths of the workday and was unable to complete tasks in a normal manner, the VE testified under cross examination by Plaintiff that there would be no jobs in the national economy that the individual could perform

3

because the person would be unable to maintain employment. Tr. 295. The VE testified that his answer would remain the same if the individual experienced the problems only one-third of the workday. *Id.* In answer to a third hypothetical posed by Plaintiff, the VE opined that an individual who experienced delusions for ten to fifteen minutes two or three times per week that left her unable to function beforehand due to fatigue and "insufficiency" would be able to complete the workday on non-delusional days but otherwise would have difficulty. Tr. 296. He further opined that an individual who was unable to manage his or her own disability benefit payments would have difficulty maintaining employment. *Id.*

The ALJ issued his unfavorable decision and findings on November 8, 2007.

### C.    The ALJ's Evaluation and Findings

The ALJ made the following findings with attendant evaluations of the medical evidence:

(1)    Plaintiff had not engaged in substantial gainful activity since December 14, 2004. Tr. 22.

(2)    Plaintiff had the severe impairments of bipolar disorder, borderline intellectual functioning, and a history of substance abuse. *Id.*

(3)    Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* The ALJ noted that Plaintiff had mild restrictions in activities of daily living and, as of June 2007, took care of her own personal hygiene and feeding, cooked occasionally, performed household chores, assisted with grocery

4

shopping and meal planning, and handled money management tasks on her own. Tr. 23-24. Plaintiff also stated in her benefits application that she was responsible for the care of her two year-old son. Tr. 24.

The ALJ found that Plaintiff had mild difficulties in social functioning. He noted that, although Plaintiff indicated on her application that she prefers to isolate herself from others, she acknowledged having "no difficulties getting along with family, friends, or others," and attended church, 12-step meetings, and movies on a weekly basis. *Id.*

The ALJ further found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. Plaintiff's mental status examination of June 2007 evinced I.Q. scores ranging from 71 to 74, placing her in the borderline range of intellectual functioning. She was able to repeat only four digits forward and backwards, and experienced difficulty while counting backwards from twenty to twelve. There was no evidence of repeated episodes of decompensation. *Id.* The ALJ determined that, because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation with repeated episodes of decompensation, criteria for a listed impairment were not met. *Id.* Further, Plaintiff did not have a verbal, performance, or full scale I.Q. of 59 or less, or an I.Q. between 60 and 70 with an additional physical or mental impairment imposing an additional and significant work-related limitation of function. *Id.*

(4)     Plaintiff had no exertional limitations. She exhibited no limitations on her ability to make judgments on simple work-related decisions, and could understand,

remember, and carry out simple instructions. She exhibited mild limitations on her ability

to understand, remember, and carry out complex instructions, and on her ability to respond

appropriately to usual work situations and changes in routine work setting and to interact

appropriately with co-workers, supervisors, and the public. She had moderate limitations in

her ability to make judgments on complex work-related decisions. *Id.* 25.

In making this finding, the ALJ referred to Plaintiff's testimony that, despite

treatment, she continues to have hallucinations (seeing "green people in the lights"), racing

thoughts, suicidal ideation, difficulty getting along with others, and difficulty concentrating.

He further made reference to Plaintiff's testimony that she received special education

services prior to dropping out of school in the ninth grade, and that she had bathed two days

before the hearing and changed her clothes the day before the hearing. Tr. 26.

The ALJ was of the opinion that Plaintiff's medically determinable impairments could

reasonably be expected to produce the alleged symptoms, but that her statements concerning

the intensity, persistence, and limiting effects of these symptoms were not entirely credible.

*Id.* The ALJ noted that, while Plaintiff was allegedly disabled since June 2000, the record

contained no evidence of any treatment or evaluations from a mental perspective prior to

October 2003. *Id.* Medical records from UTMB Correctional Managed Care Services during

Plaintiff's six-month incarceration revealed that, on October 20, 2003, Plaintiff reported a

history of marijuana, crack cocaine, and alcohol abuse, but stated she had been drug-free

since 2002. Although she reported a history of mental health treatment, she was reported as

having euthymic (normal) mood and congruent (appropriate) affect. *Id.* She was well oriented with logical and goal-directed thought processes. Plaintiff denied having auditory or visual hallucinations, and engaged in appropriate interaction with her medical providers. Her memory was assessed as being intact, but her insight and judgment abilities were assessed as poor. No evidence of a mood or thought disorder was found. *Id.*

Plaintiff's next mental status evaluation was performed on October 15, 2004, at which time she reported hearing "mumbling voices" at night and while watching television. She was noted as having appropriate appearance and hygiene, with only mild anxiety. She had logical and goal-directed thought processes. Her medical providers noted that, although Plaintiff's intelligence was "somewhat diminished," her memory continued to be intact, with "fair" insight and judgment. *Id.*

Plaintiff was again seen on December 14, 2004, at which time she was evaluated by clinicians at the Mental Health and Mental Retardation Authority. Tr. 27. She complained of crying spells, difficulty sleeping and concentrating, anhedonia, fatigue, racing thoughts, and auditory hallucinations. She reported a history of seeing "little green men," but indicated she had not seen them for two weeks. She also reported a history of cocaine addiction with sobriety for seven months. Plaintiff was assessed as having a major depressive disorder with psychotic features, cocaine dependence, and a GAF score of 45.[1] She was subsequently

---

[1]GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASSOCIATION: DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV-TR") 32-34 (4th ed. 2000). A GAF rating of 30 indicates some impairment

diagnosed on December 31, 2004, as having a bipolar disorder with cocaine and marijuana dependence, and was treated with medication. *Id.* She reported improved mood and decreased anxiety and hallucinations on January 18, 2005. Plaintiff's mental status examination on January 29, 2005, evinced normal appearance, grooming, and motor behaviors. She was assessed as having "normal" abilities to relate to others and sustain work, but with "limited" insight, judgment, and ability to respond to changes and stress in work settings. *Id.*

In April 2005, Plaintiff denied having depressive symptoms or auditory hallucinations, but reported experiencing racing thoughts, social isolation, reduced focus and concentration, and occasional mood swings. *Id.* In June 2005, she was asymptomatic except for auditory hallucinations, but her medications were decreasing their frequency and intensity. Plaintiff was assessed as "asymptomatic" in August 2005. She reported having social isolation, racing thoughts, irritability and depression in October 2005, but admitted she had not been compliant with her medications. *Id.*

The ALJ stated that, despite Plaintiff's allegations of ongoing and disabling symptoms, the record contained no evidence of any mental health treatment from October

---

in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. A GAF rating of 60 indicates moderate symptoms (such as flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (such as few friends, conflicts with peers or co-workers). A GAF rating of 20, on the other hand, indicates some danger of hurting one's self or others, a failure to maintain minimal personal hygiene, or gross impairment in communication. Accordingly, the higher the GAF score, the greater the person's functional ability.

20, 2005, through May 2007. *Id.* She was admitted to the University of Texas Harris County Psychiatric Center on May 17, 2007, after presenting with complaints of depression, insomnia, paranoia, suicidal ideation, and auditory/visual hallucinations.   Despite her subjective complaints, clinicians noted that she was well oriented with appropriate behaviors, and had logical and goal-directed thought processes without attention/concentration impairment.  She underwent treatment at the Center until her discharge on May 31, 2007, at which time she demonstrated normal mood and improved self-care and interaction, with no overt psychosis or bizarre behavior. *Id.*

At her evaluation in June 2007, Plaintiff reported being compliant with her medications and abstinent from alcohol and illegal substances.  Tr. 28.  She described her family and extended family relationships as being "ok," and stated that she was voluntarily limiting her interactions with neighbors and her community.   Plaintiff's affect at the evaluation was "flat," but she was neatly dressed and appropriately groomed. *Id.*  No indications of hallucinations or delusions were observed.  Test results showed Plaintiff was reading and spelling at a fourth grade level and performing math at a sixth grade level.  She had "elevated" scores on the Minnesota Multiphasic Personality Inventory which, according to her physician, "usually" indicated depression, emotional inappropriateness, over-ideation and significant anxiety or suspicion, and concentration difficulties.  *Id.*  The physician indicated that if psychosis were present, the individual typically would be unable to function just prior to such an episode and would have frequent major thought disturbances to the point

9

of disorientation. He did not, however, assess Plaintiff as having a psychosis. The physician opined that Plaintiff had a bipolar disorder and borderline intellectual functioning with a GAF of 56. *Id.*

The ALJ concluded that the medical records failed to support Plaintiff's allegations of ongoing and disabling symptoms. He cited case law allowing an ALJ to consider the objective medical evidence in testing credibility and find the subjective complaints exaggerated. *Id.* The ALJ further noted that Plaintiff's claims of ongoing and disabling symptoms were inconsistent with her activities of daily living, specifically in her admission that she took care of her own personal needs such as bathing, grooming, and dressing, and could cook, handle money, perform chores, and use public transportation. *Id.* She indicated in her application that she had no difficulty getting along with others, and that she attended meetings, church, and movies on a weekly basis and was responsible for the care of her two-year old son. During her June 2007 examination, she reported that she was independent in self-care, performed household chores, cooked, assisted with grocery shopping, and handled money management tasks on her own. *Id.* The ALJ referred to case authority holding that the performance of household chores and other daily activities may be considered in evaluating the credibility of a claimant's professed functional limitations.

After considering Plaintiff's daily activities, the medical records, and the paucity of treatment records from 2005 to 2007, the ALJ determined that Plaintiff was less than forthcoming regarding her symptom and functional limitations. Tr. 29. He observed that

none of Plaintiff's treating physicians or providers had offered an assessment of her work-related limitations.  During Plaintiff's assessment in June 2007, however, her physician completed a Medical Source Statement, which indicated that Plaintiff had no limitations in her ability to understand, remember, and carry out simple instructions, and only mild limitations in her ability to understand, remember, and carry out complex job instructions, interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and changes in a routine work setting.  The ALJ afforded significant weight to the opinion, as it was consistent with the objective findings noted in the body of the physician's report. *Id.*

In their Mental Residual Functional Capacity Assessment of Plaintiff, state medical consultants indicated that she retained the ability to understand and follow simple instructions, adapt to routine work environments, and interact appropriately with co-workers and supervisors.  The ALJ afforded some weight to these opinions which also support his finding that Plaintiff was "not disabled," although he did find her "limited." *Id.*

(5)     Plaintiff had no past relevant work. *Id.*

(6)     Because Plaintiff was 40-years old, she was a "younger individual" on the date she filed her application. *Id.*

(7)     Plaintiff had a ninth grade education (special education) and was able to communicate in English. *Id.*

(8)   Transferability of job skills was not an issue because Plaintiff did not have past relevant work.  *Id.*

(9)   Considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there were jobs that existed in significant numbers in the national economy that she could perform.  *Id.*  The ALJ noted that, in answer to a hypothetical question which included Plaintiff's RFC, the VE testified that such an individual would be capable of performing 100% of sedentary, light, and medium unskilled jobs.  The ALJ concluded that, based on the VE's testimony, and in consideration of Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, and that a finding of "not disabled" was appropriate.  Tr. 30.

(10)   Plaintiff was not under a disability as of December 14, 2004, the date she filed her application.  *Id.*

The ALJ concluded that Plaintiff was not disabled and denied her claim for benefits under the Act.  *Id.*

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment under Federal Rules of Civil Procedure Rule 56 requires the Court to determine whether the moving party is entitled to summary judgment as a matter of law based on the evidence thus far presented.  FED. R. CIV. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). A genuine issue of material fact exists if a reasonable fact finder could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

Judicial review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether substantial evidence in the record supports the decision and whether the ALJ applied proper legal standards in evaluating the evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). If the Commissioner's decision satisfies both of these requirements, it must be affirmed. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

## A. "Substantial Evidence"

The widely-accepted definition of substantial evidence is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "something more than a scintilla but less than a preponderance." *Id.* The Commissioner has the responsibility of deciding any conflict in the evidence. *Id.* If the findings of fact contained in the Commissioner's decision are supported by substantial evidence appearing in the record, they are conclusive, and this Court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In applying this standard, the Court is to review the entire record, but may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *See Brown*, 192 F.3d at 496. In other words, the Court is to defer to the Commissioner's decision as much as possible without making its review meaningless.

### B.      Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving that he is disabled within the meaning of the Act. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423 (d)(3). A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1948 (5th Cir. 1990).

To determine whether a claimant is capable of performing any substantial gainful activity, the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

(1)   a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

(2)   a claimant will not be found to be disabled unless he has a "severe impairment";

(3)   a claimant whose impairment meets or is equivalent to an impairment listed in the Listings will be considered disabled without the need to consider vocational factors;

(4)   a claimant who is capable of performing work that he has done in the past must be found 'not disabled'; and

(5)   if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears the burden of proof on the fifth step. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Brown*, 192 F.3d at 498. The Commissioner can satisfy his burden either by reliance on the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner satisfies his burden of proof as to the fifth step, then the burden shifts back to the claimant to prove he cannot perform the work suggested. *Muse v. Sullivan*, 925 F.2d

785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. *Greenspan*, 38 F.3d at 236.

## III. ANALYSIS

Plaintiff complains that the ALJ's evaluation of her severe mental impairment of bipolar disorder is not supported by substantial evidence; that the ALJ failed to properly evaluate Plaintiff's obesity and its effect on her other impairments; and that the ALJ's finding that Plaintiff can perform work existing in significant numbers in the national economy is not supported by substantial evidence. (Docket Entry No. 13.) Each of these grounds will be discussed separately, below.

### A. Mental Impairment and RFC

The ALJ found that Plaintiff had the severe mental impairment of bipolar disorder. Tr. 22. Plaintiff contends that the ALJ's unfavorable evaluation of Plaintiff's RFC regarding this mental impairment is unsupported by substantial evidence or constitutes legal error in the following four particulars:

(1) The ALJ's findings as to Plaintiff's "mild" and "moderate" limitations are undefined, and are thus too vague to properly evaluate Plaintiff's ability to perform work. (Docket Entry No. 13, p. 11.)

(2) The ALJ's finding that Plaintiff has a moderate impairment in concentration, persistence, and pace is not compatible with his mental RFC which essentially limits Plaintiff to an ability to perform simple or complex work. *Id.*

(3) The ALJ's finding that Plaintiff has only a "mild" limitation in social functioning is not supported by the evidence. *Id.*

(4)    The ALJ erred in failing to make a specific finding as to whether Plaintiff is capable of maintaining work, because her bipolar disorder is an impairment that "waxes and wanes." *Id.*

If an ALJ determines that a claimant has a medically determinable mental impairment under 20 C.F.R. §§ 404.1520a and 416.920a, he must evaluate the degree of functional loss resulting from such mental impairment. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). Specifically, the ALJ is required to evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "B" criteria. A five-point scale of "none, mild, moderate, marked, and extreme" is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 416.920a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F.3d at 705. The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 416.920a(e)(2).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, he must determine the severity of such impairment. 20 C.F.R. § 416.920a(d). If he finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), he must then determine if it meets or equals a listed mental disorder under 20 C.F.R. Pt. 404, Subpt. P, app. 1, 12.00-12.09 and 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe

but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment, as was done in the instant case. *See Boyd*, 239 F.3d at 705.

The term "residual functional capacity assessment" describes an ALJ's finding about the ability of an individual to perform work-related activities. SOC. SEC. RULING 96-5p (July 2, 1996). The RFC assessment is based upon all of the relevant evidence in the case record, including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SOC. SEC. RULING 96-8p (July 2, 1996). The ALJ is solely responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. It is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). In making a determination of RFC, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1520(e).

(1)   *Undefined Findings*

In the instant case, the ALJ determined that Plaintiff had "mild" limitations in activities of daily living; "mild" limitations in social functioning; "moderate" limitations in concentration, persistence, or pace; and no evidence of any repeated episodes of decompensation. Tr. 23-24. The ALJ stated that he translated his impairment findings into work-related functions for purposes of assessing Plaintiff's RFC. *Id*. Plaintiff claims that,

because the terms "mild" and "moderate" are undefined by the ALJ in his written findings, the findings are too vague to act as proper evaluations of Plaintiff's ability to perform work.

In determining Plaintiff's RFC in light of her mental impairments, the ALJ found that she had no limitations in her ability to make judgments on simple work-related decisions, and could understand, remember, and carry out simple instructions. He further found that Plaintiff had mild limitations in her ability to understand, remember, and carry out complex instructions, respond appropriately to usual work situations and changes in a routine work setting, and interact appropriately with the public, supervisors, and co-workers. He found moderate limitations in her ability to make judgments on complex work-related decisions. Tr. 25.

In making these findings, the ALJ expressly relied on, and afforded significant weight to, the "IQ, Mental Status, and MMPI Evaluation" report filed by Dr. Zuccone. Tr. 29, 294, 227-28. In the report, Dr. Zuccone assessed Plaintiff as having no limitations in understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions. She further evaluated Plaintiff as having mild limitations in understanding, remembering, and carrying out complex instructions, and moderate limitations in the ability to make judgments on complex work-related decisions. Tr. 227. Dr. Zuccone determined that Plaintiff had mild limitations in her ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting. By "mild"

limitation, Dr. Zuccone meant that "There is a slight limitation in this area, but the individual can generally function well." By "moderate" limitation was meant, "There is more than a slight limitation in this area, but the individual is still able to function satisfactorily."

Plaintiff complains that, while the ALJ accorded Dr. Zuccone's report "significant weight," he failed to expressly adopt and restate her definitions of "mild" and "moderate" in his written findings. Plaintiff alleges that, as a result of this failure to define, it is "impossible" to determine the specific limitations the ALJ found as to her mental functioning. (Docket Entry No. 13, p. 7.) Plaintiff provides this Court no case or statutory authority in support of this alleged error. In response to Plaintiff's argument, Defendant asserts that the terms were unrelated to the ALJ's RFC finding, and definitions did not need to be included in that portion of the decision. (Docket Entry No. 20, p. 4.) Because Plaintiff fails to show that the ALJ erred as a matter of law in not expressly defining "mild" and "moderate" in his RFC finding, Defendant is entitled to summary judgment under this issue.

(2) *Inconsistent Findings*

Plaintiff complains that the ALJ's finding that she had "no" limitations regarding simple work and only "mild" limitations regarding complex work is inconsistent with his finding of "moderate" limitations in Plaintiff's concentration, persistence, or pace. These two findings, however, are not inherently contradictory. Plaintiff may be able to complete detailed non-complex, or simple, job instructions with moderate limitations in concentration, persistence, and pace. *See Jones v. Astrue*, 2010 WL 1404124, *12 (S.D. Tex. 2010).

Plaintiff's reliance on the out-of-circuit decision in *Keiderline v. Astrue*, 2008 WL 2120154 (E.D. Pa. 2008), is misplaced.   *Keiderline* addressed a situation in which the ALJ's hypothetical question failed to include his finding that the claimant had a moderate limitation in concentration, persistence, and pace.   The point was not that moderate limitation in concentration, persistence, and pace was inconsistent with a finding that a claimant could perform simple, detailed work instructions, but that the claimant's limitation in concentration, persistence, and pace had been omitted from the hypothetical question. Thus, the decision provides Plaintiff no support for her claim that the ALJ's RFC findings are inconsistent. *See Jones* at *12.

(3)   *"Mild" Limitations in Social Functioning*

Plaintiff further complains that the ALJ's finding that she had only "mild" limitations in social functioning is unsupported by substantial evidence in the record.   In support, Plaintiff refers to her testimony of having no friends; that she stayed in her room while living with a relative; and that she worked alone without talking to her supervisor while working at the car body shop.   She further refers to her subjective complaints of distractibility and racing thoughts, isolation, irritability, paranoia, and outbursts and to experiencing anxiety when in an over-active environment.   Her medical records reflect depressive symptoms of "social withdrawal" and wanting to "isolate and withdraw."   Plaintiff directs the Court to Dr. Zuccone's evaluation records showing that her family relationships were "okay" but restricted.   This evaluation evinces Plaintiff's statements that she limited her interactions

with her family and that, "by choice," she limited her interactions with neighbors and the community.  She expressed a strong preference for solitary activities in order to reduce arguments, verbal altercations, irritability, and scrutiny by others.  Plaintiff stated her children lived with other relatives, but that she had a good relationship with them.  She reported getting along well with everyone in her school environment.  Dr. Zuccone opined in her report that persons with Plaintiff's test score pattern tended to have "significant anxiety or suspicion" and were "frequently anxious and keep others at a distance."  She did not, however, identify Plaintiff as exhibiting these specific behaviors.  Dr. Zuccone diagnosed Plaintiff with "mild" limitations in her ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and changes in a routine work setting.  By "mild" limitations, Dr. Zuccone meant "a slight limitation" and that "the individual can generally function well."  Tr. 227-28.

This Court's review of the Commissioner's denial of disability benefits is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Ripley v. Chater*, 67 F.3d 552, 555 (5th. Cir. 1995).  It is not this Court's province to re-evaluate or re-weigh the evidence; rather, it must review the record to ensure the existence of substantial evidence to support the ALJ's determinations. "Substantial evidence" is "something more than a scintilla but less than a preponderance." *Carey*, 230 F.3d at 135.

22

This Court's review of the medical records also shows that, in January 2005, Plaintiff's psychiatrist opined that her ability to relate to others was "normal." Tr. 185-86. In her disability benefits application, Plaintiff reported that she had no problem getting along with others, attended church, meetings, and was responsible for the care of her two-year old son. Tr. 71. Her medical care providers and examiners comment throughout the records that Plaintiff presented as well groomed and appropriately dressed, and that she maintained appropriate eye contact, behavior, and responses to interviews and questions. This Court's careful review of the record finds substantial evidence to support the ALJ's determination that Plaintiff had only a "mild" limitation in social functioning, and Defendant is entitled to summary judgment under this issue.

(4)    *"Waxing and Waning" Impairment*

Plaintiff further asserts that the ALJ erred as a matter of law in failing to make a specific determination that she can work on a regular and continuing basis and maintain employment for a significant period of time. (Docket Entry No. 13, pp. 9-11.) Related to this is Plaintiff's assertion that the ALJ failed to consider the fact that her bipolar disorder mental impairment "waxes and wanes." *Id.*

Disability determinations turn on whether applicants can perform substantial gainful activity. Substantial gainful activity contemplates a capacity for employment on a regular and continuing basis. *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003). The Commissioner's regulations require administrative adjudicators to determine RFC for work

activity "on a regular and continuing basis." 20 C.F.R. § 404.1545(b). Work on a regular and continuing basis means "8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. R. 96-8p (1996).

In absence of an express finding, reviewing courts generally assume that administrative assessments of RFC include *implicit* findings of ability to work on a regular and continuing basis. *Frank*, 326 F.3d at 619. Only when medical or other evidence shows that symptoms caused by a severe impairment "wax and wane" is a separate, explicit finding required. However, allegations that an impairment causes "good days and bad days" simply does not rise to the level of impairment anticipated by the Fifth Circuit in *Frank*. *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).

As proof that her mental impairment falls within the "waxing and waning" parameters of *Frank*, Plaintiff points to her GAF scores appearing in the record. Plaintiff argues that these scores vary greatly, from 65 in 2005, indicating "mild" symptoms, to 30, 40, and 56 throughout 2007, demonstrating moderate to more serious symptoms. According to Plaintiff, these scores indicate that her bipolar disorder "waxes and wanes" in severity, and that the ALJ erred as a matter of law in not considering this fact in his evaluation. However, no medical evidence appears in the record supporting Plaintiff's assertion of a causal relationship between her bipolar disorder and her GAF scores, and she raised no such claim or argument at her hearing.

There is no medical evidence in the records establishing that, by its nature, Plaintiff's bipolar disorder "waxes and wanes" in intensity such that her ability to maintain employment was not adequately taken into account in her RFC determination. *See Perez*, 415 F.3d at 465. Accordingly, no legal error is shown and Defendant is entitled to summary judgment under this issue.

**B.     Obesity**

Plaintiff next asserts that the ALJ failed to consider her obesity and its effect on her other impairments.  In support, she directs the Court to two references to her weight in the medical records – a description of "obese" and a diagnosis of "morbid obesity" dated September 6, 2007.  Tr. 251, 253.  Her attendant discharge plan ordered a "regular diet" and an "unrestricted level of activity."  Tr. 254.  In records dated July 7, 2007, she is described as 5'2" tall and weighing 184 pounds.  Tr. 236.  Other records note her weight as 180 in September 2005, as 162 in March 2005, and as 163 pounds in November 2004.  Tr. 139, 199.

As correctly argued by the Commissioner, Plaintiff did not claim obesity as an impairment in her application or at the hearing.  To the contrary, Plaintiff stated at the hearing that she would "meet or equal listing 12.04, a listing that particularly deals with bipolar, and we contend that drug or alcohol will be an issue in this case, but it's our contention that it will not be a substantial issue."  Tr. 284.  "Obesity" was never mentioned at the hearing.  Indeed, when asked her current weight at the hearing, Plaintiff replied, "I don't know."  Tr. 287.  No medical evidence was presented demonstrating any connection

25

between her weight and any physical limitations, nor was she ever treated for obesity or given activity restrictions due to her wight.  Plaintiff does not show that she raised the issue of obesity before the ALJ or that the ALJ improperly disregarded it.  *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

The ALJ did not err in not evaluating Plaintiff's alleged obesity and its effect on her other impairments.  Plaintiff did not claim that her weight constituted an impairment, and the medical evidence fails to establish that it caused her any physical limitations.  Defendant is entitled to summary judgment under this issue.

### C.  Ability to Perform Other Work

It is well established that a claimant has the burden of proof at steps one through four of the sequential evaluation process, while the Commissioner has the burden of proof at step five.  *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002).  To that end, the ALJ in the instant case relied on the expert testimony of the VE and determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs in existence in significant numbers in the national economy that she could perform.  In examining the VE, the ALJ expressly relied on two pages of Dr. Zuccone's report (Exhibit 10F), as follows:

ALJ:   [VE], we have an evaluation here in Exhibit 10F, pages six and seven, I don't know if you've seen that.  If you'd look at that.

ATTY:      What exhibit was that, your Honor?

ALJ:   What did I say 10 –

VE:   10F.

ATTY:      OK.

ALJ:  Six and seven.

VE:   Yes, sir.

ALJ:  It's at the end of that CE.

ATTY:      Oh, yeah.

ALJ:  With those limitations would the claimant be able to perform any Substantial Gainful Activity?

VE:   Yes, sir.

ALJ:  And say what percentages of sedentary, light, and medium unskilled work?

VE:   Well just looking at this, Your Honor, they should be able to do generally all of the work in those areas.

ALJ:  Oh. Counsel, do you have some questions?

Tr. 294. Counsel for Plaintiff then asked the following hypotheticals:

ATTY:      [VE], I also want to call your attention to that same exhibit and I'll ask you some questions from the exhibit. Assume with me that you have an individual that has difficulty in concentrating and their thoughts are almost always unusual and unconventional and this occurs over three-fourths of the workday to the extent it would keep this individual from, from completing a task in a normal manner. Would there be any jobs in the national economy that such an individual could perform?

VE:   No.

ATTY:      And why not?

VE:    Well if you can't concentrate for – and complete tasks for over three-fourths of the day, you wouldn't be able to maintain employment.

ATTY:        Assume that – for the second hypothetical assume you have an individual who has delusions that occasionally lead to bizarre or unpredictable behavior and assume that occasionally would be one-third of the workday. Would there be any jobs in the national economy that such an individual would be able to perform?

VE:    No.

ATTY:        And why not?

VE:    Well, I think, it's pretty obvious if, if someone were to have bizarre behavior one-third of the workday, they would not be able to maintain employment.

ATTY:        On the third hypothetical assume you have an individual who would have these delusions two or three times per week and would be unable to function just prior to such an episode due to fatigue and inefficiency and this would only occur about two or three times per week and it will occur about 10 to 15 per minutes – or 10 or 15, 10 to 15 minutes, but it would be unpredictable. How would that affect an individual's ability to complete an eight hour workday, in your opinion?

VE:    Well they'd be able to complete the workday on the days they didn't have the delusions and otherwise would have difficulty.

Tr. 294-96.

At the hearing, the VE testified that the claimant would be able to perform substantial gainful employment based on the limitations appearing in the IQ, Mental Status, and MMPI Evaluation report filed by Dr. Zuccone.[2]  Tr. 294, 227-28.  In the report, Dr. Zuccone

---

[2]Plaintiff raised no objections to the ALJ's examination of the VE, either as to form or substance.

evaluated Plaintiff as having no limitations in understanding and remembering simple instructions, carrying out simple instructions, or in her ability to make judgments on simple work-related decisions.   She further evaluated Plaintiff as having mild limitations in understanding, remembering, and carrying out complex instructions, and moderate limitations in the ability to make judgments on complex work-related decisions.  Tr. 227. Dr. Zuccone determined that Plaintiff had mild limitations in her ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting.  By "mild" limitation, Dr. Zuccone meant "There is a slight limitation in this area, but the individual can generally function well." By "moderate" limitation she meant, "There is more than a slight limitation in this area, but the individual is still able to function satisfactorily."

Plaintiff complains under this ground that the ALJ's finding that she can perform other work existing in significant numbers in the national economy is not supported by substantial evidence.  To this end, she contends that the ALJ and VE relied on only two of the three relevant pages in Dr. Zuccone's report, and that on page three of the report, Dr. Zuccone stated that Plaintiff was unable to manage benefits payments in her own interest. Tr. 229. At the hearing, Plaintiff cross-examined the VE regarding this opinion on page three of the report, as follows:

> ATTY:    Okay.  Now the last question.  At 10F, page five, is a capability opinion and it states that in your opinion is the patient able to manage benefits [payments] in his or her own interest?  And the answer is no.  Now assume

with me from the beginning that this answer would be based on the use of drugs so the, the answer clearly would be no. Now the second hypothetical I, I, I wanted to present to you asks you about if a person is unable to manage their own benefits, what affect would this have on an individual working in the national economy, in your opinion as a vocational expert who had testified over a thousand times in these types of hearings?

VE:    Probably make it pretty difficult to maintain employment.

Tr. 296.  Plaintiff contends that, given the VE's answer to this final hypothetical, the ALJ

should have found Plaintiff unable to maintain employment and, consequently, disabled.

(Docket Entry No. 13, p. 14-15.)  However, Fifth Circuit precedent holds that an ALJ need

only incorporate into his hypotheticals those limitations he finds reasonably supported by the

record. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  Plaintiff's subsequent inclusion

of the limitation in his own hypothetical on cross-examination did not change the fact that

the ALJ did not accept the specific limitation.  An ALJ is not bound by VE testimony based

upon hypothetical assumptions which the ALJ does not accept.  *Owens v. Heckler*, 770 F.2d

1276, 1282 (5th Cir. 1985).

To prevail under this argument, Plaintiff would need to demonstrate that the ALJ

erroneously failed to incorporate the complained-of capacity limitation into his hypotheticals

and that the capacity limitation was reasonably supported by the record.  Because Plaintiff

presents no argument that Dr. Zuccone's capacity limitation was reasonably supported by the

record, she fails to show that the ALJ erred in not incorporating the capacity limitation into

his hypotheticals.  Defendant  is entitled to summary judgment under this issue.

This Court recognizes the seriousness of Plaintiff's medical complaints.  However, the Court must review the record to determine only whether the ALJ's decision is supported by more than a scintilla, but less than a preponderance, of evidence.  *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  The Court finds more than a scintilla of evidence in the instant case to support the ALJ's decision.  Therefore, the Court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.  *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).  Further, Plaintiff has not established that the ALJ failed to apply proper legal standards in her case.

For the reasons stated above, the Court finds that Defendant has satisfied his burden.  Accordingly, the ALJ's decision finding Plaintiff not disabled is supported by substantial evidence in the record.  The Court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination.  Therefore, the Court **GRANTS** Defendant's motion for summary judgment (Docket Entry No. 20) and **AFFIRMS** the Commissioner's decision.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's cross motion for summary judgment (Docket Entry No. 20), **DENIES** Plaintiff's motion for summary judgment (Docket Entry No. 13), and **AFFIRMS** the Commissioner's decision.

31

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the ___ day of September, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

32